IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN DAYE<br>412 Harmar Street<br>Marietta, OH 45750<br>     Plaintiff,<br><br>  v.<br><br>HI-VAC CORPORATION<br>117 Industry Rd.<br>Marietta, OH 45750<br><br> **Serve also at**<br> HI-VAC CORPORATION<br> c/o CORPORATION SERVICE<br> COMPANY<br> 3366 Riverside Dr. Ste. 103<br> Upper Arlington, OH 43221<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

  Plaintiff Sean Daye ("Daye"), by and through undersigned counsel, as his Complaint against Defendant Hi-Vac Corporation ("Hi-Vac"), states and avers the following:

## PARTIES

1. Daye is a resident of Washington County, Ohio.

2. Hi-Vac is an Ohio corporation whose principal place of business is located in Washington County, Ohio.

## PERSONAL JURISDICTION

3. Hi-Vac is an Ohio limited liability company; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio.

4. As such, the exercise of personal jurisdiction over Hi-Vac comports with due process.

5. This cause of action arose from or relates to events that occurred in this district, thereby conferring specific jurisdiction over Hi-Vac.

**SUBJECT MATTER JURISDICTION (FEDERAL)**

6. This Court has original subject matter jurisdiction of this case under 28 U.S.C. §1331 inasmuch the matters in controversy are brought pursuant to 42 U.S.C. 2000e, *et seq.*

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Daye's state law claims under Ohio R.C. § 4112.02(A) and any other Ohio claims made herein because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District (28 U.S. Code § 1391(b)(2).

**ADMINISTRATIVE HISTORY.**

9. Within three hundred of the conduct alleged below, Daye filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Hi-Vac ("Discrimination Charge").

10. In his Discrimination Charge, Daye alleged that he had been wrongfully terminated by Hi-Vac on the basis of his race.

11. On or about October 19, 2023 the EEOC issued and mailed a Notice of Right to Sue letter to Daye against Hi-Vac ("Right to Sue Letter").

12. A true and accurate copy of the EEOC Right to Sue Letter is attached hereto as Exhibit A.

13. Daye has properly exhausted his administrative remedies against Defendants pursuant to Ohio R.C. § 4112.052(B)(2)(b).

**FACTUAL ALLEGATIONS.**

14. Daye is African American.

15. Daye is a former employee of Hi-Vac.

16. Daye was hired by Hi-Vac in roughly July of 2013 as a Shipping and Receiving Clerk.

17. As his career with Hi-Vac progressed, Daye took on more and more responsibility.

18. Hi-Vac promoted Daye first to Shipping and Receiving Supervisor, then Traffic and Facility Supervisor and finally Production Supervisor.

19. Daye maintained his responsibilities as Traffic and Facility Supervisor in his role as Production Supervisor.

20. In these roles, Daye was given three company credit cards and a certain amount of discretion with regard to making vendors and supplier decisions.

21. In exercising his discretion as to spending, Daye acquired an understanding of how Hi-Vac's vendors and suppliers worked, which ones best met Hi-Vac's needs, and how best to interact with these vendors and suppliers to obtain the results desired.

22. In exercising his discretion as to spending, Daye followed Hi-Vac's established procedures, chain of command, and spending policies.

23. Within those parameters, Daye strove to keep costs down while simultaneously getting the best results for Hi-Vac that could be obtained.

24. For example, Daye spearheaded efforts to obtain truck trailers so that Hi-Vac could perform some of its own shipping, thus lowering shipping costs.

25. Hi-Vac refused to hire drivers for these trucks, thus making Daye's efforts to reduce costs ineffective.

26. Things began to change when Daye began to report to Robert G. Stone ("Stone"), Hi-Vac's Director of Manufacturing, on or about March 26, 2021.

27. Stone is Caucasian.

28. Stone treated Daye differently than Stone's Caucasian subordinates.

29. When Stone would solicit advice, feedback, and input from his Caucasian reports, Stone notably refused to listen to any such input from Daye.

30. In December 2021 or January 2022, Hi-Vac was contemplating what to do about a plasma cutting machine (the "Machine") that had stopped functioning.

31. Daye had a long relationship with the original manufacturer of the Machine.

32. Daye brought in a sales representative and technical advisor from the manufacturer to discuss options for the repair or replacement of the Machine.

33. While Daye was attempting to get the approval of Hi-Vac's upper management to purchase the necessary repairs to the Machine, Stone took over the project.

34. Stone ignored Daye and the reports he had prepared regarding what Hi-Vac needed from the Machine.

35. As a result of Stone's intervention, certain necessary upgrades to the Machine were not implemented.

36. As a result of Stone's intervention, the Machine functioned at around 75-80% of the capacity it would have functioned at had if Daye's advice had been heeded.

37. Subsequent to a reorganization of Hi-Vac's management structure, Stone refused to speak with Daye at all, routing all communication through Daye's new direct supervisor, Dennis Hoosier.

38. On November 2, 2022, Stone called Daye into a conference room.

39. In that room, David Baumgardner ("Baumgardner"), Director of Manufacturing, terminated Daye's employment.

40. Hi-Vac's stated reason for terminating Daye was that he had "misused funds."

41. When Daye asked for details concerning how he had misused funds, Baumgardner refused to provide him with any details.

42. Hi-Vac's stated reason for terminating Daye was a pretext for discrimination based on Daye's race.

43. Baumgardner and Stone preferred to have Caucasians in managerial roles, rather than an African American.

44. At the time of his termination, Daye was the only African American in a supervisory role for Hi-Vac.

45. Subsequent to his termination, Daye's job duties were transferred to Dan Arnold and Peter Kaiser.

46. Arnold and Kaiser are Caucasian.

47. Subsequent to Daye's termination, Daye filed his Discrimination Charge.

48. Hi-Vac responded to Daye's Discrimination Charge by providing the EEOC with a Position Statement on or about May 8, 2023.

49. In Hi-Vac's Position Statement, it disclaimed that it had terminated Daye for "misuse of funds," and attempted to change its rationale for terminating Daye to one based on his performance.

50. In its Position Statement, Hi-Vac detailed numerous decisions Daye had made in his role and criticized them.

51. Hi-Vac's newly asserted performance justification for terminating Daye is also a pretext.

52. Prior to his termination, Daye had never been disciplined for any of the decisions Hi-Vac criticized in its Position Statement.

53. Prior to his termination, Daye had never received any coaching or a performance improvement plan ("PIP").

54. Prior to his termination, Daye had not received any training to improve his performance.

55. Prior to his termination, Daye's annual performance reviews were positive.

56. Upon information and belief, Hi-Vac has used and uses discipline, coaching, training, and PIPs to improve the performance of poorly performing, non-African American employees.

57. Hi-Vac skipped these steps and made no effort to help Daye improve his perceived performance deficits prior to terminating him because he is African American.

58. By skipping these steps and proceeding immediately to termination, Hi-Vac not only treated Daye differently than non-African American employees, but it also denied him the opportunity to correct any perceived performance issues.

59. In reality, Hi-Vac terminated Daye because of his race.

60. As a result of Hi-Vac's unlawful conduct, Daye has suffered and will continue to suffer damages.

## COUNT I: WRONGFUL TERMINATION BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981.

61. Daye restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. Hi-Vac's discrimination against Daye violated the rights afforded to Daye under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

63. By the conduct described above, Hi-Vac intentionally deprived Daye of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of his employment relationship with Hi-Vac, in violation of Section 1981.

64. As a result of Hi-Vac's discrimination against Daye in violation of Section 1981, Daye has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Daye to injunctive, equitable, and compensatory monetary relief.

65. As a result of Hi-Vac's discrimination against Daye in violation of Section 1981, Daye has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

66. In its discriminatory actions as alleged above, Hi-Vac has acted with malice or reckless indifference to the rights of Daye, thereby entitling Daye to an award of punitive damages.

67. To remedy the violations of the rights of Daye secured by Section 1981, Daye requests that the Court award him the relief prayed for below.

## COUNT II: WRONGFUL TERMINATION BASED ON RACE IN VIOLATION OF TITLE VII (42 U.S.C. 2000e).

68. Daye restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

69. Daye is African American, thus putting him in a protected class with regard to his race.

70. By subjecting Daye to different terms and conditions of employment than Caucasian employees, Hi-Vac took an adverse employment action against Daye based on his race.

71. By subjecting Daye to different terms and conditions of employment than Caucasian employees by ignoring his input, Hi-Vac violated 42 U.S.C. 2000e, *et seq.* ("Title VII").

72. By terminating Daye, Hi-Vac took an adverse employment action against Daye based on his race, in violation of Title VII.

73. As a result of Hi-Vac's discrimination against Daye in violation of Title VII, Daye has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Wilson to injunctive, equitable, and compensatory monetary relief.

74. As a result of Hi-Vac's discrimination against Daye in violation of Title VII, Daye has suffered mental anguish and emotional distress, including, but not limited to, depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

75. In its discriminatory actions as alleged above, Hi-Vac acted with malice or reckless indifference to Daye's rights, thereby entitling him to an award of punitive damages.

76. To remedy the violations of the rights secured to Daye under Title VII, Daye requests that the Court award him the relief prayed for below.

### COUNT III: WRONGFUL TERMINATION BASED ON RACE IN VIOLATION OF OHIO R.C. § 4112.02, *et seq.*

77. Daye restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

78. Daye is African American, thus putting him in a protected class with regard to his race.

79. By subjecting Daye to different terms and conditions of employment than Caucasian employees, Hi-Vac took an adverse employment action against Daye based on his race.

80. By subjecting Daye to different terms and conditions of employment than Caucasian employees, Hi-Vac violated Ohio R.C. § 4112.02(A).

81. By terminating Daye, Hi-Vac took an adverse employment action against Daye based on his race in violation of Ohio R.C. § 4112.02(A).

82. As a result of Hi-Vac's discrimination against Daye in violation of R.C. § 4112.02(A), Daye has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

83. In its discriminatory actions as alleged above, Hi-Vac acted with malice or reckless indifference to Daye's rights, thereby entitling him to an award of punitive damages.

84. To remedy the violations of the rights secured to Daye under Ohio R.C. § 4112.02 (A) Daye requests that the Court award him the relief prayed for below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sean Daye requests judgment in his favor against Defendant, Hi-Vac Corporation, containing the following relief:

(a) An order directing Hi-Vac to place Daye in the position he would have occupied but for Hi-Vac' unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Daye;

(b) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Daye for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Daye for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Daye for harm to his professional and personal reputation and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Daye in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest;

(f) An award of punitive damages against Hi-Vac;

(g) An award of costs that Daye has incurred in this action, as well as Daye's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25825 Science Park Dr., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  chris.wido@spitzlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Sean Daye demands a trial by the maximum number of jurors permitted.

*s/ Chris P. Wido*
Chris P. Wido (0090441)